# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

**FILED**

**Apr 21, 2025**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

SEALED

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| JAIRO RAUL VENTURA | ) | 2:25-mj-0066 JDP |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of     May 7, 2024; Aug. 1, 2024; Sept. 23, 2024; and Sept 23, 2024     in the county of     Solano     in the

Eastern     District of     California     , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count 1: 21 U.S.C. § 841(a)(1) | Count 1: Distribution of at least 40 grams of fentanyl |
| Count 2: 21 U.S.C. § 841(a)(1) | Count 2: Distribution of at least 40 grams of fentanyl |
| Count 3: 21 U.S.C. § 841(a)(1) | Count 3: Distribution of at least 400 grams of fentanyl |
| Count 4: 21 U.S.C. § 841(a)(1) | Count 4: Distribution of heroin |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

/s/ Brian Nehring

*Complainant's signature*

Brian Nehring, Special Agent, DEA

*Printed name and title*

Sworn to me and signed via telephone.

Date:     April 21, 2025

*Judge's signature*

City and state:     Sacramento, California

Jeremy D. Peterson, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent Brian Nehring of the DEA, being duly sworn, depose and state as follows:

1. I am a Special Agent of the Drug Enforcement Administration (DEA), San Francisco Field Division, and have been so employed since 1991. I have had numerous assignments since beginning with DEA, including being assigned to the San Francisco Division Office between 1991 and 1994, the Alameda County Narcotics Task Force between 1995 and 1997, the San Francisco Division Clandestine Laboratory Enforcement Team from 1997 to 1999, the Oakland Resident Office between 1999 and 2002, and the Mobile Enforcement Team (MET) between 2002 and 2004. I have been assigned to the Sacramento Division Office since September of 2004. I have been assigned to the Organized Crime Drug Enforcement Task Force (OCDETF) Strike Force Group from 2019 to the present time.

2. This Affidavit is submitted in support of a Criminal Complaint charging Ronald Isaac ZELAYA-MURILLO with the following offenses:

COUNT 1: On or about November 2, 2023, in the County of Solano, State and Eastern District of California, Ronald Isaac ZELAYA-MURILLO did knowingly and intentionally distribute at least 40 grams of a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide (commonly referred to as fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 2: On or about November 30, 2023, in the County of Solano, State and Eastern District of California, Ronald Isaac ZELAYA-MURILLO did knowingly and intentionally distribute at least 40 grams of a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide (commonly referred to as fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 3: On or about January 24, 2024, in the County of Solano, State and Eastern District of California, Ronald Isaac ZELAYA-MURILLO did knowingly and intentionally distribute at least 40 grams of a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide (commonly referred to as fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 4: On or about January 10, 2025, in the County of Solano, State and Eastern District of California, Ronald Isaac ZELAYA-MURILLO did knowingly and intentionally distribute at least 40 grams of a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide (commonly referred to as fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 5: On or about February 27, 2025, in the County of Solano, State and Eastern District of California, Ronald Isaac ZELAYA-MURILLO did knowingly and intentionally distribute at least 400 grams of a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide (commonly referred to as fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. Additionally, this Affidavit is submitted in support of a Criminal Complaint charging Jairo Raul VENTURA with the following offenses:

COUNT 1: On or about May 7, 2024, in the County of Solano, State and Eastern District of California, Jairo Raul VENTURA did knowingly and intentionally distribute at least 40 grams of a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide (commonly referred to as fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 2: On or about August 1, 2024, in the County of Solano, State and Eastern District of California, Jairo Raul VENTURA did knowingly and intentionally distribute at least 40 grams of a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide (commonly referred to as fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 3: On or about September 23, 2024, in the County of Solano, State and Eastern District of California, Jairo Raul VENTURA did knowingly and intentionally distribute at least 400 grams of a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide (commonly referred to as fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 4: On or about September 23, 2024, in the County of Solano, State and Eastern District of California, Jairo Raul VENTURA did knowingly and intentionally

2

distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

## **PROBABLE CAUSE**

4.    Beginning in 2023, I initiated an investigation of a fentanyl trafficker identified as Yohan Murillo-Medina who was operating in the Eastern District of California.

5.    During April 2023, I spoke to a Confidential Source, hereinafter referred to as the CS, regarding Murillo-Medina's ongoing drug trafficking activities.  The CS originally agreed to speak with me in hopes of potentially receiving consideration with regards to his/her pending state drug charge.  No promises were made to the CS other than that the CS's information and assistance would be made known to the appropriate prosecutor and the CS's attorney.  It should be noted that the CS has no prior significant criminal history, primarily drug arrests, and no crimes of violence or perjury arrests.  Based upon the CS's subsequent assistance, which included making controlled purchases of narcotics, including fentanyl, in other unrelated investigations, as well as providing undercover introductions, the CS received consideration in his/her then-pending state case.  At this time, the CS does not have a currently pending case and is cooperating solely for monetary consideration.  I have also spoken with a particular state law enforcement officer who had previously utilized the CS as a confidential source to make controlled purchases of narcotics and who utilized the CS's information in prior investigations.  This officer found the CS's information to be truthful and reliable.  I have also found the CS's information to be truthful and have substantiated it through multiple sources.  I have utilized and incorporated the CS's information and assistance in federal search warrants authorized by the court in other investigations.  For these reasons, I find the CS to be reliable in this case.

6.    The CS related that he/she was an associate of an individual known to him/her as "Yohan;" the CS later identified "Yohan" as Yohan Murillo-Medina from a USMS booking photograph.  The CS stated that he/she had met Murillo-Medina in Oakland in 2022 and that Murillo-Medina was a Honduran male adult who sold fentanyl.  Murillo-Medina told the CS that he and his brother had been smuggled into the United States by a Mexican cartel and that they were selling fentanyl at the direction of these cartel members to pay what they owed for being transported into the U.S.

7.    The CS stated that he/she used fentanyl regularly during 2022 and early 2023 and that the CS and his/her friends would pool their money and go to Oakland to purchase a few ounces of fentanyl from Murillo-Medina.  The CS stated that they

had almost always met Murillo-Medina in Oakland at the northeast corner of International Boulevard and 56th Avenue, and Murillo-Medina had almost always arrived on foot from 56th Street from the east.  The CS further stated that the CS believed that he/she had observed Murillo-Medina exiting a residence located at 1425 56th Avenue numerous times.  On more than one occasion, Murillo-Medina would send the CS SMS text photographs of apparent kilograms of fentanyl being mixed and pressed immediately before exiting this residence, making the CS believe that Murillo-Medina used the residence to store and sell the drugs.

8.  The CS related that Murillo-Medina had been utilizing cellular telephone 510-706-0459, hereinafter referred to as TARGET CELL PHONE #1, to facilitate Murillo-Medina's ongoing trafficking activities the entire time he/she had known Murillo-Medina.

9.  Inquiries with T-Mobile revealed that TARGET CELL PHONE #1 was subscribed in the name of Yohaan Murillo at 9416 Peach Street, Oakland, California.

10.  The CS stated that Murillo-Medina had told the CS that one of his best customers was an individual in Vacaville, California, whom he regularly transported and delivered a kilogram or more of fentanyl to in Vacaville.  Murillo-Medina told the CS that he would meet the CS in Vacaville if the CS could come the same days that Murillo-Medina delivered to this customer.  Murillo-Medina also stated that he had customers in Sacramento.  The CS stated that Murillo-Medina sometimes would take BART into San Francisco to distribute fentanyl in the Tenderloin and would occasionally meet with the CS's associates at the Richmond BART Station in Contra Costa County to give them fentanyl when they drove down from Butte County, California.

11.  The CS stated that he/she knew multiple individuals who were travelling from Butte County to Oakland to meet Murillo-Medina and pick up anywhere from a couple of ounces to ten or more ounces of fentanyl at a time from Murillo-Medina.  I subsequently monitored and recorded a call between the CS and Murillo-Medina in April 2023 on TARGET CELL PHONE #1, during which Murillo-Medina offered to supply the CS with a very large amount of fentanyl whenever the CS was ready.

12.  Later, I confirmed that Murillo-Medina had been arrested in April 2023 by the San Francisco Police Department while in possession of approximately two kilograms of fentanyl in the Tenderloin neighborhood of San Francisco.  I also confirmed that in May 2023, Murillo-Medina was charged in the United States District Court for the Northern of California District with Possession with Intent to Distribute Fentanyl (21 U.S.C. § 841(a)(1)) and was later arrested.  Murillo-Medina is currently in federal

custody for that case.

13. The CS stated that in July 2023, he/she overheard two female acquaintances call Murillo-Medina's telephone number to arrange to go to Oakland to purchase fentanyl. The CS indicated that although it was the same phone number he/she had used in the past (TARGET CELL PHONE #1), the person on the phone did not sound exactly like Murillo-Medina. The CS went with the two females in their vehicle to Oakland, to the same intersection at International Blvd and 56th Avenue. While there, they were approached by two Honduran adult males who arrived in an older red Honda or Toyota sedan. One of the individuals, who the CS approximated to be a 21-year-old Honduran male, looked similar in appearance to Murillo-Medina and introduced himself to the CS as Murillo-Medina's brother, recently identified and referred to hereinafter as Ronald Isaac ZELAYA-MURILLO. ZELAYA-MURILLO related that Murillo-Medina had been in jail for several months and that ZELAYA-MURILLO was continuing to pay their mutual debt to the cartel by continuing to sell fentanyl. The CS observed ZELAYA-MURILLO sell two ounces of fentanyl to the two females. The CS asked ZELAYA-MURILLO if he would be willing to deliver fentanyl outside of Oakland. ZELAYA-MURILLO told the CS that he was already delivering to locations in the Eastern District of California and would be willing to deliver if an additional delivery fee was applied. The CS told this individual that he/she had a customer who would be willing to purchase a pound at a time, but the customer would not come to Oakland. ZELAYA-MURILLO told the CS to call him at TARGET CELL PHONE #1 and that he would deliver out to that area whenever the CS wanted. Following this conversation, the CS observed the two Honduran male adults get back into the red sedan, drive east down 56th Avenue, and park in front of 1425 56th Avenue, where they walked towards the residence.

14. I subsequently verified with T-Mobile that despite Yohan Murillo-Medina being in federal custody since May 2023, TARGET CELL PHONE #1 continued to be an active telephone account and was being utilized regularly to make and receive calls. I also verified that following Murillo-Medina's incarceration, TARGET CELL PHONE #1 began to be used as a sender contact number for money remitting services for wire transfers to Mexico (which had not occurred prior to Murillo-Medina's incarceration). This led me to believe that the new user of the telephone, most likely ZELAYA-MURILLO based upon the above information, had taken over Murillo-Medina's drug dealing activities and was remitting drug proceeds back to Mexico.

15. The CS related that on approximately two occasions between August and October of 2023, he/she traveled to Oakland, California with people from Butte County when they met with ZELAYA-MURILLO to buy fentanyl using TARGET CELL PHONE

#1.  The CS stated that he/she had observed ZELAYA-MURILLO provide multiple ounce quantities of fentanyl to his/her associates at the northeast corner of International Boulevard and 56th Avenue in Oakland.  The CS believed that ZELAYA-MURILLO was still utilizing the residence at 1425 56th Avenue since ZELAYA-MURILLO was continuing to have his customers meet so close by it.  The CS stated that ZELAYA-MURILLO had arrived both times in an older model red foreign (Toyota/Honda) sedan.

16.  During these encounters, the CS reiterated to ZELAYA-MURILLO that he/she knew an individual in the Sacramento area who wanted to get large amounts of fentanyl but did not want to come down to Oakland.  ZELAYA-MURILLO told the CS that he would deliver the fentanyl half-way to that area as long as the customer purchased at least $3,000 worth and paid approximately $400 per ounce.  The CS told ZELAYA-MURILLO that he/she would relay this to the potential buyer and would let ZELAYA-MURILLO know.  ZELAYA-MURILLO also told the CS that he had "clean," i.e. un-cut fentanyl, available for $700 to $800 per ounce in addition to the normal adulterated and colored fentanyl.

17.  Between October 30 and November 1, 2023, the CS engaged in text messages and calls with ZELAYA-MURILLO on TARGET CELL PHONE #1 in which the CS related that the buyer from Sacramento was interested in obtaining the fentanyl from ZELAYA-MURILLO half-way between Sacramento and Oakland.  ZELAYA-MURILLO wanted to know how much fentanyl and where, and the CS told him the buyer would buy between $3,000 and $4,000 worth of fentanyl but the buyer was unsure how many ounces and of what type of fentanyl (adulterated or "clean") that the buyer would want.  On November 1, 2023, ZELAYA-MURILLO texted the CS asking when and where, and the CS responded with a text message of the directions and link to the AM/PM Gas Station located at 134 Pittman Road, Fairfield, CA at the Green Valley/Highway 80 exit.  The CS texted ZELAYA-MURILLO that he/she would call ZELAYA-MURILLO the next day when the CS met with the buyer in Sacramento and before coming down to meet him the next day.  These text messages were preserved.

18.  On November 2, 2023, the CS used my cell phone to place a monitored and recorded call to ZELAYA-MURILLO at TARGET CELL PHONE #1 in my presence.  During this call, the CS told ZELAYA-MURILLO that he/she had met the buyer and was on the way to meet ZELAYA-MURILLO in Fairfield.  The CS related that the buyer had $3,500 and wanted seven ounces of regular fentanyl and one ounce of "clean."  ZELAYA-MURILLO asked what colors the buyer wanted and said that he had red, yellow, blue, and green available.  The CS responded that any color was fine except for green.  ZELAYA-MURILLO responded that he would be there to

6

conduct the deal.

19. Based upon these calls and texts, I transported the CS in an official government vehicle to the area of the AM/PM in anticipation of this transaction. Because there was not much parking in this area, I relocated to the connected Burger King lot just to the south (190 Pittman Road). Prior to arriving at this location, the CS was searched for contraband with negative results and outfitted with a concealed transmitter and recorder which allowed the ensuing transaction to be recorded. I used my telephone to send ZELAYA-MURILLO a text message that we had relocated and were in a particular vehicle in the Burger King lot to the south. ZELAYA-MURILLO responded via text, "ok brother im going there." Shortly thereafter, ZELAYA-MURILLO called from TARGET CELL PHONE #1 and indicated he had arrived. I observed ZELAYA-MURILLO drive through the lot in a silver Honda sedan, California License Plate 9DTS077 (hereinafter "SUBJECT VEHICLE 2"), which he parked next to my vehicle. ZELAYA-MURILLO then exited the Honda and entered my vehicle though the rear passenger door carrying a white plastic shopping bag. The CS introduced me as the buyer to ZELAYA-MURILLO, and ZELAYA-MURILLO handed me the white plastic bag; I opened it and observed it contained approximately seven ounces of various colored (red, blue, and yellow) suspected fentanyl in multiple clear plastic knotted bags, which was subsequently determined to be 254 gross grams (gg). ZELAYA-MURILLO confirmed that there were seven ounces in the bag. I then showed him that I possessed $3,500 official authorized funds and asked if he had the additional ounce of "clean." ZELAYA-MURILLO indicated it was in his vehicle before exiting my vehicle, entering SUBJECT VEHICLE 2 through the driver's side door, and returning to my vehicle (again entering through the rear passenger door) to hand me a clear plastic knotted bag containing a white chunky substance, suspected fentanyl, subsequently determined to be 58 gg. At this time, I gave ZELAYA-MURILLO the agreed upon $3,500. I told him that I would call him in the future and would want at least 10 ounces. Following this exchange, ZELAYA-MURILLO returned to SUBJECT VEHICLE 2 and departed.

20. The DEA Western Regional Laboratory analyzed the substances purchased from ZELAYA-MURILLO on November 2, 2023, as being 221.3 grams of a mixture and substance containing fentanyl.

21. In the subsequent days, ZELAYA-MURILLO called me from TARGET CELL PHONE #1 and told me that he was prepared to deliver additional fentanyl whenever I was ready.

22. Inquiries with the California Department of Motor Vehicles (DMV) revealed that

SUBJECT VEHICLE 2 was registered to Joe SMITH at 3538 Pine Street, #602, Sacramento, California. I later learned that this address did not exist, which led me to believe that Joe SMITH was also a fake name. Based on my training and experience, I know that drug traffickers will often use fake names and/or addresses to avoid detection and identification by law enforcement.

23. During November 2023, I engaged in recorded calls with ZELAYA-MURILLO arranging to purchase approximately twelve ounces of fentanyl on November 30, 2023, for $4,500. Prior to this time, on November 22, 2023, the Honorable Deborah Barnes authorized a GPS phone locator ping order for TARGET CELL PHONE #1 which was implemented by T-Mobile. The phone locator information for TARGET CELL PHONE #1 showed it consistently during the evening and early morning hours in the immediate vicinity of the area near the intersection of 56th Avenue and E. 15th Street in Oakland with a degree of uncertainty of a few hundred meters.

24. On November 30, 2023, I spoke to ZELAYA-MURILLO at approximately 2:00 p.m., and he indicated that he was about to leave Oakland to come meet me. At this time, the GPS phone locator information for TARGET CELL PHONE #1 showed it in this same location near the intersection of 56th Avenue and E. 15th Street. Shortly after this call, Task Force Officer (TFO) Austin Kurtz observed a red 2007 Honda Accord, Oregon Plate 186LFH, VIN 1HGCM66417A050524, parked at this intersection.[1] TFO Kurtz observed this vehicle departing east bound on 55th Avenue. TFO Kurtz, who had observed ZELAYA-MURILLO previously during the initial buy on November 2, 2023, recognized him as the driver of the red Honda Accord at this time. TFO Kurtz subsequently observed the vehicle travel west onto Highway 580 and then travel Highway 80 north in the direction of Fairfield. The GPS pings for TARGET CELL PHONE #1 showed it apparently travelling in tandem with this vehicle. This vehicle ultimately arrived at the same Burger King in Fairfield where I was located, and ZELAYA-MURILLO parked the red Honda, entered my vehicle, and sold me the suspected fentanyl inside my vehicle in exchange for the $4,500. ZELAYA-MURILLO informed me he would contact me in the future from a new number. Following this transaction, ZELAYA-MURILLO returned to the red Honda and was followed by agents directly back to Oakland where he stopped at several locations, including a cellular telephone store. Agents ultimately followed ZELAYA-MURILLO back to E. 15th Street just north of 56th Avenue where he parked the vehicle and was observed walking on foot to the residence located at 5521 E. 15th Street, which he apparently opened with a key before entering.

---

[1] This vehicle was subsequently observed in January 2024 with California plates, *see infra*, and is hereafter referred to as "SUBJECT VEHICLE 1."

25. The DEA Western Regional Laboratory analyzed the substance purchased from ZELAYA-MURILLO on November 30, 2023, as being 361.2 grams of a mixture and substance containing fentanyl.

26. I subsequently learned that the San Francisco Police Department had executed a state search warrant at 5521 E. 15th Street, Oakland, California on May 2, 2023, at which time officers located approximately 500 grams of fentanyl, smaller amounts of cocaine, cocaine base, heroin and methamphetamine (amounts which I know from my training and experience to be consistent with possession for sale), a loaded 9mm "ghost gun" pistol, a 12 gauge shotgun, loaded .223 rifle magazines and ammunition, $3,580 cash, and indicia for multiple persons who were not present in the home. I also noted that they located blenders, binder/adulterant material, coloring, kilo molds, and presses consistent with the breaking down, blending and pressing of fentanyl for re-sale, which I have previously observed at prior search warrants relating to fentanyl. I noted that the CS had previously stated that ZELAYA-MURILLO had related that his house had been raided by the police but he had not been home.

27. Beginning on December 13, 2023, I began to receive text messages from ZELAYA-MURILLO from T-Mobile Cellular telephone 510-880-8549 (TARGET CELL PHONE #2), identifying himself as "Isaac" and indicating that he was ready to provide additional fentanyl whenever I was ready and to call him. Toll analysis showed that this telephone had also been recorded in contact with TARGET CELL PHONE #1 in the recent past. I received a text message from TARGET CELL PHONE #2 on January 9, 2024, inquiring when I would come see ZELAYA-MURILLO again, and I indicated it would be soon.

28. I noted that during the first week on January 2024, I spoke with an individual in Sacramento County who had been arrested that day by the Sacramento Sheriff's Department for Possession of Fentanyl with Intent to Distribute. This individual told me that he/she had travelled to Oakland, California that day and had met with an individual known to him/her as "Isaac" and who had supplied him/her with fentanyl. This individual showed me in his/her telephone the number for Isaac, and I observed that it was TARGET CELL PHONE #2.

29. On January 22, 2024, the Honorable Jeremey D. Peterson authorized a phone locator ping order for TARGET CELL PHONE #2 which was implemented by T-Mobile. The information for the cellphone showed that it was located most evenings in a radius of uncertainty covering the residence located at 5521 E. 15th Street, Oakland, California; at its most precise, the ping information showed TARGET CELL PHONE #2 located exactly at this residence.

30. I subsequently arranged during recorded calls and text messages with ZELAYA-MURILLO at TARGET CELL PHONE #2 to purchase approximately 14 ounces of fentanyl for $5,250 on January 24, 2024, at the same location (the Burger King) in Fairfield, California.  That morning, the phone locator information for TARGET CELL PHONE #2 showed it located in the immediate vicinity of 5521 E. 15th Street, Oakland, California.  Officers and agents established surveillance at this location, at which time California Department of Justice (DOJ) SA Todd Carter observed SUBJECT VEHICLE 1 (a red 2007 Honda Accord, California License Plate #9KBH806), parked on the 5500 block of E. 15th Street in close proximity to the residence.  Subsequent inquiries with the California DMV revealed that this vehicle had just been registered in California with a listed VIN 1HGCM66417A050524, which matched the VIN listed to the 2007 Honda bearing the Oregon Plate (expired) ZELAYA-MURILLO used to deliver the fentanyl during November 2023; this was the same vehicle but now with a California License Plate.  ZELAYA-MURILLO told me during calls that he was having issues because his vehicle had a nearly flat tire which he had to change; officers conducting surveillance of the vehicle observed that the front driver's side tire was, in fact, nearly flat.  Later that afternoon, SUBJECT VEHICLE 1 departed the area of the residence, and the phone locator information showed that TARGET CELL PHONE #2 had also departed and appeared to travel directly without stopping to the vicinity of the Burger King in Fairfield.  There, I observed ZELAYA-MURILLO arrive, driving SUBJECT VEHICLE 1, and park in the lot directly next to my vehicle.  Then, I observed ZELAYA-MURILLO apparently remove part of the center console, remove a bag which contained suspected fentanyl, and carry it over to me.  I then paid him $5,250 in exchange for the bag of drugs.  Following this transaction, ZELAYA-MURILLO departed in SUBJECT VEHICLE 1 west bound on Highway 80; the phone locator information for TARGET CELL PHONE #2 showed it shortly thereafter located in the immediate vicinity of 5521 E. 15th Street, Oakland, California, confirming my belief that ZELAYA-MURILLO travelled in SUBJECT VEHICLE 1 directly back to his residence.

31. The DEA Western Regional Laboratory subsequently analyzed the suspected fentanyl which ZELAYA-MURILLO delivered on January 24, 2024, as being approximately 376.5 grams of a mixture and substance containing fentanyl.

32. In early February 2024, I exchanged text messages with ZELAYA-MURILLO at TARGET CELL PHONE #2 regarding the quality of the fentanyl and that I would see him again soon.  The phone locator information for the telephone during February 2024 showed it still consistently most evenings in the immediate vicinity of 5521 E. 15th Street, Oakland, California.  On February 27, 2024, the Honorable

Jeremy D. Peterson authorized a GPS phone locator ping order for TARGET CELL PHONE #2 which was implemented by T-Mobile. The phone locator information for TARGET CELL PHONE #2 during March 2024 showed it regularly located in and around the vicinity of 5521 E. 15th Street, Oakland, California and alternately located along the 7000 block of Ney Avenue, Oakland, California. I subsequently learned that Yohann Murillo-Medina's identified common-law-wife and the mother of his child, who were both regularly visiting Murillo-Medina at Santa Rita Jail in Pleasanton, California where Murillo-Medina was in USMS custody awaiting his federal drug charges, provided a residential address on Ney Avenue where ZELAYA-MURILLO's TARGET CELL PHONE #2 was alternately located, leading me to believe that ZELAYA-MURILLO was accessing this location as well. During this same time period, ZELAYA-MURILLO contacted me via TARGET CELL PHONE #2 to check in on me and to solicit me to purchase additional fentanyl which I told him I would in the near future.

33. In March 2024, I spoke with Forensic Fingerprint Examiner (FFE) Michael Hall of the DEA Western Regional Laboratory (WRL). FFE Hall related that he had examined the box that the 376.5 grams of fentanyl had been delivered on January 24, 2024, and FFE Hall had developed fingerprints he had matched to the known fingerprints of Ronald Issac ZELAYA-MURILLO (FBI# H91J6606L). I examined prior Customs and Border Protection (CBP) booking photographs associated with previous processing of ZELAYA-MURILLO, and I recognized the person depicted in the booking photograph as "Isaac" who had delivered the fentanyl in November 2023 and January 2024. I also noted that the T-Mobile subscriber information for TARGET CELL PHONE #1 listed it as subscribed to "Ronald MURILLO."

34. I subsequently learned that on March 31, 2024, ZELAYA-MURILLO was arrested in the Tenderloin neighborhood of San Francisco for multiple drug charges. I later obtained and reviewed the San Francisco Police Department arrest report and learned that on March 30, 2024, at approximately 11:30 p.m., SFPD officers targeting street-level open-air narcotics dealing observed ZELAYA-MURILLO in an area of the Tenderloin neighborhood of San Francisco and observed ZELAYA-MURILLO engaging in actions leading them to believe he was actively selling drugs. Officers approached and detained ZELAYA-MURILLO, and during a search of his person and the backpack he was carrying, they located approximately 719 gross grams of suspected fentanyl, as well as amounts of other suspected drugs (methamphetamine, cocaine, cocaine base, and marijuana), a functioning digital scale, and two cellular telephones. ZELAYA-MURILLO was read his *Miranda* rights, which he acknowledged, and he subsequently admitted that he was selling drugs. As of this time, ZELAYA-MURILLO is in custody in San Francisco County Jail awaiting his pending drug charges. I believe that the two telephones which were

seized from his person were in fact TARGET CELL PHONE #1 and TARGET
CELL PHONE #2. I noted that as of mid-April 2024, calls to both numbers went
directly to voicemail and both voicemail boxes were full.



Booking Photograph of ZELAYA-MURILLO

35. I subsequently reviewed Vehicle License Plate Reader (LPR) application data, which
utilizes commercial and law enforcement cameras to read and record the dates, times
and locations when a vehicle bearing a particular license plate is observed and
photographed, for SUBJECT VEHICLE 1 – the vehicle that ZELAYA-MURILLO is
known to use. From this information, I learned that SUBJECT VEHICLE 1
continued to move about, and it was observed at various locations despite ZELAYA-
MURILLO's then incarceration. On April 24, 2024, I travelled to Oakland and
observed SUBJECT VEHICLE 1 parked on E. 15th Street at the intersection of 56th
Avenue. Based upon this, I believed that someone else, also living at the residence
at 5521 E. 15th Street, was continuing to use SUBJECT VEHICLE 1 and the
residence was still occupied by someone associated with him and his drug dealing
activities.

36. Based upon this, I attempted to call both TARGET CELL PHONE #2 and TARGET
CELL PHONE #1 on April 24, 2024. I noted that when I called TARGET CELL
PHONE #2, it continued to go straight to voicemail, which was full. However, when
I called TARGET CELL PHONE #1, the call was answered by another individual. I
asked for Isaac, and the person who answered the phone informed me that Isaac had
been arrested by the police, but that he was Isaac's brother and was taking care of the
business going forward. The person who answered stated that they could help me
with whatever I needed as long as Isaac confirmed who I was. I gave my undercover
name and descriptors (location, vehicle, amounts I had previously obtained, and
where we had met), and this individual indicated he believed he knew who I was and

that after talking to Isaac he would be willing to deliver fentanyl to me. This individual asked how much fentanyl I wanted to obtain, and I told him that I needed about eight to ten ounces. This individual told me that his name was "Hero" (phonetic) and that he would be willing to deliver the fentanyl to me in Fairfield. This individual subsequently sent me text messages from TARGET CELL PHONE #1 indicating that I should call him when I was ready.

37. Based on the foregoing, I believed that service for TARGET CELL PHONE #1 was re-initiated and continued by a member of the Medina-Murillo and ZELAYA-MURILLO fentanyl distribution organization in order to continue their ongoing fentanyl distribution activities, as both individuals had been utilizing this number consecutively to distribute fentanyl between 2022 and late April 2024, that another member of their group who is also a fentanyl dealer working in concert with them was aware that most, if not all of their customers, knew this number and would continue to call it in order to arrange to purchase fentanyl in the future. I also believed it was highly likely that the source of supply for uncut kilograms of fentanyl was in Mexico and was most likely contacting members of the DTO at this same number over a span of several years, and it was important that this line of communication remain open.

38. On May 2, 2024, the Honorable Jeremey D. Peterson authorized a GPS phone locator ping order for TARGET CELL PHONE #1, which was initiated within a couple of days. The GPS phone locator information for TARGET CELL PHONE #1 showed it regularly and during most night-time and early morning hours located within the immediate vicinity of 3208 West Street, Oakland, California (hereafter "SUBJECT PREMISES 1") – at the intersection of West Street and 32nd Avenue.

39. In the days leading up to May 7, 2024, I engaged in recorded narcotics-related calls and text messages with the individual "Hero," who was utilizing TARGET CELL PHONE #1. I arranged to purchase ten ounces of fentanyl for $3,500 at the same Burger King in Fairfield where I had previously met ZELAYA-MURILLO. On May 7, 2024, I was unable to telephonically contact this individual as the number was going straight to voicemail; however, I sent this person a Whats App message at the TARGET CELL PHONE #1 number and subsequently received a Whats App text message and a regular call back, informing me that he was running late and would be there by 3:30 p.m. The GPS phone locator information for the telephone showed it located at the same area (the intersection of West Street and 32nd Avenue, in the immediate vicinity of SUBJECT PREMISES 1) in Oakland and then showed the telephone apparently travelling north from Oakland on Highway 80 into Solano County. Based upon these calls, I located myself and my vehicle at the Burger King in anticipation of the delivery; prior to arriving at this location, I was outfitted with a

recorder.  Shortly thereafter, I observed an individual arrive in a red 2009 Honda Sedan, California license #8HCG618, which he parked near me.  Inquiries with the DMV revealed this vehicle was registered to Jairo VENTURA at SUBJECT PREMISES 1, which I noted was an address located where the GPS phone locator information showed the telephone regularly located.  I observed a young Hispanic male adult as the driver and sole occupant of the vehicle, and I observed him reach into the center console and remove a large knotted black plastic bag, which he then carried as he exited the vehicle and entered my vehicle.  He then introduced himself as "Jairo."[2]  Jairo VENTURA then provided me with the bag, which I opened and found contained ten separate one-ounce quantities of suspected fentanyl.  I paid him $3,500 for the drugs.  Following social conversation, we separated, and VENTURA returned to his vehicle and ultimately departed.



Photograph of Jairo VENTURA on 05-07-2024

40. The DEA Western Regional Laboratory analyzed the substance I purchased from VENTURA that day as being 281.2 grams of a mixture and substance containing fentanyl.

---

[2] Agents subsequently identified "Jairo" as Jairo VENTURA.

14

41. SA Carter and other DOJ Special Agents subsequently conducted surveillance of SUBJECT PREMISES 1 during May 2024 and observed both the red 2009 Honda sedan, California License #8HCG618, parked at the intersection of 32nd Avenue and West Street as well as SUBJECT VEHICLE 1, which ZELAYA-MURILLO had regularly driven in and delivered fentanyl to me in the past. Agents observed VENTURA exit the residence and depart in SUBJECT VEHICLE 1 during surveillance. VENTURA was accompanied from the residence by another unidentified Hispanic male adult with long hair and a distinctive tattoo on his hand, who left as the passenger in the same vehicle.

42. I subsequently arranged with VENTURA during recorded calls and texts in July 2024 to TARGET CELL PHONE #1 to purchase eleven ounces of fentanyl for $3,800 at the same Burger King in Fairfield on August 1, 2024. Agents conducting surveillance of SUBJECT PREMISES 1 that morning observed VENTURA exit the residence and depart in the red 2009 Honda, California License #8HCG618. Agents attempted to follow VENTURA but lost sight of him shortly thereafter. I travelled to the Burger King in Fairfield at approximately 12:30 p.m. in anticipation of this transaction and was equipped with a recording device. A short time later, I observed VENTURA arrive in the red Honda. VENTURA approached and entered my vehicle carrying a similar black plastic knotted bag, which he provided to me. After I opened the bag and observed it contained the suspected fentanyl (354 gg), I paid him the agreed cash, $3,800. VENTURA told me that he also had heroin available for between $700 and $800 per ounce. Following this transaction, VENTURA returned to his vehicle and departed, and agents followed him to a nearby business where he was observed meeting with the same unidentified HMA with long hair and the distinctive tattoo on his hand. This HMA ultimately entered the red Honda with VENTURA before they departed the vicinity.

43. I subsequently spoke to DEA Intelligence Research Specialist (IRS) Karlyn Gonzalez who queried the Money Service Business (MSB) Database for transactions associated with TARGET CELL PHONE #1. This database contains information regarding identifying and associated information associated with the remittance and receipt of money via wire transfers by companies such as Western Union, MoneyGram, etc. IRS Gonzalez observed multiple transactions during 2023 and 2024 where TARGET CELL PHONE #1 was provided as the associated contact number for money wired to individuals in both Mexico and Honduras as well as the recipient's names. I positively identified two of the individuals receiving money in Mexico based upon their extremely precise names who had been targets of prior drug investigations by the DEA; this included an individual who sold a large amount of heroin in Colorado, was the target of a state wiretap investigation, had kilogram amounts of heroin seized in recent years, and was subsequently deported.

15

44. I subsequently spoke with DEA agents in Colorado during 2024 who related to me that they were involved in a current state wire investigation regarding fentanyl distribution.  As a result of this investigation, they identified the suspected source of supply for this fentanyl as a particular individual in Mexico.  I was informed that a WhatsApp pen register was obtained for the Mexico-area code telephone of this suspected fentanyl source and that recent WhatsApp tolls revealed that this individual's telephone in Mexico was in regular WhatsApp contact with TARGET CELL PHONE #1.  I noted that I had exchanged WhatsApp texts and a call briefly with VENTURA over TARGET CELL PHONE #1 the first day I purchased fentanyl from him.

45. On September 20, 2024, the Honorable Carolyn K. Delaney authorized a GPS phone locator ping order for TARGET CELL PHONE #1, which was initiated within a couple of days.  The GPS phone locator information for TARGET CELL PHONE #1 showed it regularly and during most night-time and early morning hours located within the immediate vicinity of SUBJECT PREMISES 1.

46. On the days leading up to September 23, 2024, I engaged in recorded narcotics-related calls and text messages with VENTURA on TARGET CELL PHONE #1.  I arranged to purchase fifteen and a half ounces of fentanyl and one ounce of heroin for $6,350 at the same Burger King in Fairfield where I had previously met him.

47. On the morning of September 23, 2024, I called VENTURA at TARGET CELL PHONE #1.  VENTURA informed me that his vehicle was having an issue, and he asked if I could come to Oakland.  I told him that I was unable to do so, and he indicated he would take care of his vehicle issues and ultimately get to Fairfield to meet me.  The GPS phone locator information during this time for TARGET CELL PHONE #1 showed it located in the immediate vicinity of SUBJECT PREMISES 1, and agents conducting surveillance of this location observed SUBJECT VEHICLE 1, which ZELAYA-MURILLO had regularly driven and had used to deliver fentanyl in to me, parked at the corner of 32nd Avenue and West Street.  At approximately 12:20 p.m., SA Carter observed VENTURA exiting the downstairs front access door at SUBJECT PREMISES 1 carrying a black plastic bag.  SA Carter observed VENTURA locking the security gate behind him as he departed.  SA Carter and SA Andrew Peters observed VENTURA, who was wearing a multicolored T-shirt and shorts, walking to SUBJECT VEHICLE 1 at the intersection, which he entered and departed in.  Shortly thereafter, VENTURA used TARGET CELL PHONE #1 to send me a text message that he was on his way.  Agents observed VENTURA drive SUBJECT VEHICLE 1 to an automotive business in Oakland where it appeared that the front passenger tire was removed and either replaced or repaired.  Shortly

thereafter, agents observed VENTURA depart the business in SUBJECT VEHICLE 1 and subsequently get onto west bound Highway 580. Agents maintained surveillance as VENTURA proceeded north onto Highway 80 through Alameda County and into Solano County enroute to the agreed meeting location where agents observed him arrive at the Burger King at approximately 2:05 p.m. The GPS phone locator information for TARGET CELL PHONE #1 mirrored VENTURA's movements.

48. Prior to VENTURA arriving at the location in SUBJECT VEHICLE 1, I had parked in the Burger King lot and had been outfitted with a concealed recorder and transmitter. I observed VENTURA arrive as the driver and sole occupant of SUBJECT VEHICLE 1, which he parked a few spaces north on the right (passenger side) of my vehicle. I observed VENTURA exit the vehicle carrying a black plastic bag and enter my vehicle through the passenger door. At this time, VENTURA provided me with the black plastic shopping bag. I opened it and found a vacuum sealed clear plastic bag, further containing numerous clear plastic knotted bags, each with an amount of a white or pink chunky substance (suspected fentanyl (496 gg)). This bag also contained a clear plastic knotted bag further containing a black chunky substance (suspected heroin (62.4 gg)). I then gave VENTURA the agreed $6,350. VENTURA and I engaged in social conversation, during which he indicated he was from Honduras and had been in the United States, specifically Oakland, for approximately a year. Following this, he returned to SUBJECT VEHICLE 1 and ultimately departed.



Photograph of Jairo VENTURA on 09-23-2024

49. The DEA Western Regional Laboratory analyzed the substance I purchased from VENTURA on September 23, 2024, as being 438 grams of a mixture or substance

17

containing fentanyl and 29 grams of a mixture or substance containing heroin.

50. On December 31, 2024, and January 1, 2025, I received multiple unsolicited text messages from TARGET CELL PHONE #2, the telephone number previously utilized by Ronald Isaac ZELAYA-MURILLO prior to his arrest in March of 2024 in San Francisco. The messages were inquiring as to my status and advising me that this was "Isaac," who was available to provide fentanyl whenever I was interested (some examples of these texts: "Hey bro, I'm Issac from the business;" "Happy New Year;" "If you let me know if you need anything bro," etc.). I responded that I would reach out soon about seeing him and he responded affirmatively ("Yes brother, I'm here;" "Okay, let me know.").

51. As explained above, ZELAYA-MURILLO had been arrested by the San Francisco PD on March 31, 2024, while in possession of over 700 grams of fentanyl. At that time the two cellphones which were being used by ZELAYA-MURILLO (TARGET CELL PHONE #1 and TARGET CELL PHONE #2) and for which GPS tracker orders had been obtained, were believed seized based upon GPS locator information showing them in the Tenderloin, then at the Police Department and then turned off concurrent with ZELAYA-MURILLO's arrest. Following ZELAYA-MURILLO's arrest, VENTURA began using TARGET CELL PHONE #1 and the same vehicles used by ZELAYA-MURILLO to deliver fentanyl to me. Following the text contacts from ZELAYA-MURILLO in early 2025, I subsequently verified with the National Guard Intelligence Unit that ZELAYA-MURILLO had been sentenced in October 2024 to time served and two years' probation in San Francisco for a felony conviction for Transportation/Sales of a Controlled Substance (California Health and Safety Code 11352) and had been released from custody in November 2024.

52. Between January 7 and 10, 2025, I engaged in repeated narcotics related calls and texts with ZELAYA-MURILLO at TARGET CELL PHONE #2. ZELAYA-MURILLO stated that the "clean," e.g. unadulterated fentanyl, was about $1,300 per ounce and the "regular" fentanyl was between $350 and $400 per ounce depending on how many ounces were purchased. I told ZELAYA-MURILLO that I would figure out how much money I had, would decide how many of each I would want to get, and would call him in a few days about the meeting. ZELAYA-MURILLO sent me text messages from TARGET CELL PHONE #2 including: "Brother, I'll give you the clean one for 1200 and he regular one for 380." I told ZELAYA-MURILLO I would have close to $5,500, would probably only get one ounce of "clean" to gauge the quality before purchasing larger amounts, and that I would spend the remainder of the current money on the "regular" fentanyl. I ultimately agreed to meet with ZELAYA-MURILLO on January 10, 2025, at the same Burger King in Fairfield.

18

53. On January 10, 2025, I travelled to the Burger King in Fairfield in anticipation of this meeting, and I was outfitted with a concealed recorder and transmitter. ZELAYA-MURILLO contacted me from TARGET CELL PHONE #2 and advised me he was on his way from Oakland and was hitting traffic. ZELAYA-MURILLO continued to give periodic updates ("8 minutes brother") and photographs of his progress on the freeway. ZELAYA-MURILLO arrived in the Burger King lot in SUBJECT VEHICLE 2, the same Honda sedan that he used to deliver fentanyl at this location during the very first purchase in November 2023. Subsequent inquiries with the California DMV revealed that during 2024 this vehicle was registered in the name of Cristian Cruz Martinez at SUBJECT PREMISES 1. ZELAYA-MURILLO exited the vehicle carrying a purple Metro PCS paper shopping bag with rope handles that he brought over to my vehicle. He then entered the vehicle through the passenger door. ZELAYA-MURILLO removed a MetroPCS phone box from the bag which I observed had the number "510-258-6101" written on it; ZELAYA-MURILLO told me that this was a new cellphone number which he had just gotten and to save it for future use.

54. ZELAYA-MURILLO subsequently provided me with the Metro PCS bag which contained a large amount of suspected fentanyl; I purchased approximately 408 gg of suspected "regular" fentanyl and 56 gg of suspected "clean" fentanyl from him for a total of $5,250. ZELAYA-MURILLO and I then engaged in social conversation, and I told ZELAYA-MURILLO that I had been purchasing fentanyl from Jairo (VENTURA) but the last amount a few months ago had been of not great quality so he had stopped. ZELAYA-MURILLO stated that VENTURA was his cousin and that they all lived in Oakland. ZELAYA-MURILLO then left in SUBJECT VEHICLE 2. Agents subsequently maintained continuous surveillance of ZELAYA-MURILLO as he travelled in the vehicle directly back to Oakland, and they lost sight of him south bound on MacArthur Boulevard south of 73rd Avenue – near SUBJECT PREMISES 2.

55. Between January 10 and 11, ZELAYA-MURILLO sent me a series of text messages from 510-258-6101, hereinafter referred to as TARGET CELL PHONE #3, inquiring if I was satisfied with the quality of the "material" and instructing me not to deal with VENTURA going forward: "Friend, I wanted to tell you that if Jairo calls you, don't answer. He told me that you were no longer buying from him, that's way I asked you yesterday who was selling you the material" (text message received on January 11, 2025, at approximately 6:52 p.m.). I advised him in subsequent text messages that I liked his cousin VENTURA but that since the quality the last time had been lacking, I would deal with ZELAYA-MURILLO going forward. ZELAYA-MURILLO again confirmed that the quality of the fentanyl he had was

better.

56. The DEA Western Regional Laboratory analyzed the substances ZELAYA-MURILLO sold me on January 10, 2025 as being 352.85 grams of a mixture and substance containing fentanyl.

57. I subsequently learned that the Court authorized GPS phone locator information for TARGET CELL PHONE #1 showed it continued to be located primarily in the immediate vicinity of SUBJECT PREMISES 1 most evenings and early mornings, and other agents and I observed the red SUBJECT VEHICLE 1, the same vehicle both VENTURA and ZELAYA-MURILLO had used in the past to deliver fentanyl, parked near SUBJECT PREMISES 1 (at the intersection of West Avenue and 32nd Street).

58. On February 13, 2025, I traveled to the immediate vicinity of SUBJECT PREMISES 1 and observed SUBJECT VEHICLE 1 on 32nd Street just east of the residence. While at this location, I observed SUBJECT VEHICLE 2, the silver 2008 Honda sedan ZELAYA-MURILLO had previously used to deliver fentanyl (as recently as January 10, 2025), drive north bound onto West Avenue from 31st Street. This was just north of SUBJECT PREMISES 1 (where I believed it had been parked), and I observed that ZELAYA-MURILLO was the driver and sole occupant of this vehicle. I followed SUBJECT VEHICLE 2 north as it proceeded onto Highway 580 east. All the above led me to believe that VENTURA was continuing to reside at SUBJECT PREMISES 1, that it was highly likely that ZELAYA-MURILLO was living at this location with VENTURA or at the very least regularly frequenting the location; and that both individuals were coordinating and facilitating their ongoing fentanyl trafficking activities using the TARGET CELL PHONES.

59. On February 12, 2025, I received a text message from ZELAYA-MURILLO from TARGET CELL PHONE #3 which I did not respond to. On February 14, 2025, I received a text message from ZELAYA-MURILLO from TARGET CELL PHONE #2 also inquiring how I was doing and when I would see him again. On February 15, 2025, I called ZELAYA-MURILLO at TARGET CELL PHONE #3 and asked him which phone I should contact him at, and he indicated either one was fine. During this call, we discussed a potential upcoming fentanyl transaction for up to a pound of fentanyl in approximately a week. I asked him if he also had access to pills. ZELAYA-MURILLO asked if I was looking for "M-30s," which I know from my training and experience is slang for the most counterfeited opioid tablet manufactured by fentanyl traffickers and seized by law enforcement, which is blue with an "M" on one side and "30" on the other. I told ZELAYA-MURILLO that was the type of pill I was looking for, and he stated he could provide those pills in

1,000 count quantities and would give me a price in the future before I came to see him.

60. On February 19, 2025, the Honorable Judge Jeremy D. Peterson authorized a GPS phone locator search warrant for TARGET CELL PHONES #1, #2 and #3. I noted over the next few days that that the phone locator information for TARGET CELL PHONES #2 and #3, most recently utilized by ZELAYA-MURILLO, showed both telephones regularly located in the immediate vicinity of the southwest intersection of 84th Avenue and MacArthur Boulevard, the same area where agents had followed ZELAYA-MURILLO on January 10, 2025, and specifically normally in the immediate vicinity of SUBJECT PREMISES 2 – the residence located at 2532 84th Avenue just west of MacArthur Boulevard, most late evening and early morning hours. I subsequently obtained the tolls for TARGET CELL PHONE #2 during this period and noted that the highest frequently contacted number by this telephone was 510-880-8649, also a T-Mobile telephone. T-Mobile records revealed that 510-880-8649 was subscribed to a Monica BARRIOS at SUBJECT PREMISES 2. During the remainder of February and March 2025, the phone locator information for TARGET CELL PHONE #2 (as well as TARGET CELL PHONE #3) showed the telephone located at or in the immediate vicinity of SUBJECT PREMISES 2, and other agents and I subsequently observed SUBJECT VEHICLE 2 (ZELAYA-MURILLO's silver 2008 Honda sedan that he previously used to deliver fentanyl), parked on the south side of 84th Avenue in the immediate vicinity of SUBJECT PREMISES 2. For these reasons, I believe that ZELAYA-MURILLO is currently living at SUBJECT PREMISES 2.

61. During recorded narcotics-related calls and text messages with ZELAYA-MURILLO on both TARGET CELL PHONES #2 AND #3, I arranged to purchase seventeen and a half ounces of fentanyl for $6500 on February 27, 2025, at the same Burger King Restaurant in Fairfield. On this date, agents established surveillance in the immediate vicinity of SUBJECT PREMISES 2, as the GPS phone locator information for TARGET CELL PHONES #2 AND #3 showed them in the immediate vicinity of SUBJECT PREMISES 2 and agents observed SUBJECT VEHICLE 2 parked on the street in front of the residence.

62. Following calls I had with ZELAYA-MURILLO, during which he indicated he was leaving to come to deliver the fentanyl, SA Todd Carter observed ZELAYA-MURILLO walk from the front of SUBJECT PREMISES 2 to SUBJECT VEHICLE 2, enter the Honda, and subsequently depart in it. Agents followed SUBJECT VEHICLE 2 away but subsequently lost sight of the vehicle. Shortly thereafter, SUBJECT VEHICLE 2 returned to SUBJECT PREMISES 2, and ZELAYA-MURILLO contacted me telephonically and indicated he was getting the fentanyl

ready.  ZELAYA-MURILLO subsequently departed in SUBJECT VEHICLE 2 and travelled to Fairfield, where he met me at the Burger King.  ZELAYA-MURILLO entered my vehicle and gave me a shopping bag containing a Ziploc bag with what he claimed were fourteen (14) individual ounces of fentanyl in various colors (white, yellow, and green). ZELAYA-MURILLO removed a large plastic bag from his jacket pocket containing a solid chunk of a white substance he indicated was un-weighed out fentanyl, and he proceeded to use a digital scale to weigh out four additional ounces from this amount, indicating he was giving me an additional half ounce for having to wait.  I gave ZELAYA-MURILLO the agreed $6500 in exchange for this fentanyl, which had a gross weight of 618 grams. ZELAYA-MURILLO and I discussed a future transaction for at least twice this amount, and he indicated he would be willing to deliver the fentanyl to Sacramento.

63.  The DEA Western Regional Laboratory subsequently analyzed the substance I purchased from ZELAYA-MURILLO on 02-27-2025 in Fairfield as being 514.7 grams of a substance and mixture containing both fentanyl and carfentanil.

64.  Between March 17 and 20, 2025, I telephonically contacted VENTURA at TARGET CELL PHONE #1.  I asked VENTURA how many ounces of fentanyl he could supply for $5000, and he indicated he could provide sixteen.  We discussed not mentioning this transaction to ZELAYA-MURILLO.  VENTURA informed me that his vehicle was in poor shape, that he couldn't travel to Fairfield, and if I was willing to come closer to him, he would give me an extra ounce of fentanyl for the same price for a total of seventeen ounces.  I agreed to this, but told him that I did not want to go to Oakland.  VENTURA suggested a meeting at the Chik-Fil-A located at 1525 40th Street, Emeryville, California, relaying that this was a safe area very close to his residence, and we agreed to meet there.  During this same period, the GPS phone locator information for TARGET CELL PHONE #1 showed it located at SUBJECT PREMISES 1 during almost all days.

65.  On March 20, 2025, agents established surveillance at SUBJECT PREMISES 1 in the morning concurrent to GPS phone locator information showing TARGET CELL PHONE #1 at this exact location. Agents located SUBJECT VEHICLE 1 parked right near SUBJECT PREMISES 1 (at the intersection of West Street and 32nd Avenue).  I traveled to the Chik-Fil-A in nearby Emeryville, contacted VENTURA at TARGET CELL PHONE #1, and advised him that I had arrived.  He told me that he would be there in a few minutes.  Immediately following this call, SA Ricardo Martoccia observed VENTURA exit SUBJECT PREMISES 1 on the ground floor of the Victorian building, unlock the front gate, proceed to and enter SUBJECT VEHICLE 1, drive (followed by agents) directly to the Chik-Fil-A lot, where he parked, exited the vehicle, and entered my vehicle.  VENTURA then provided me

with a bag containing approximately seventeen individual suspected ounces of fentanyl (530 gg) in exchange for $5000.  VENTURA and I discussed potentially conducting a transaction for at least a kilogram or more in the future.  After a social conversation, VENTURA returned to SUBJECT VEHICLE 1, drove directly back to SUBJECT PREMISES 1, parked at the same location at the corner, and walked back to SUBJECT PREMISES 1.  SA Martoccia observed VENTURA use a key to unlock the gate to the property, as well as the door to SUBJECT PREMISES 1, which he entered.



VENTURA during 03-20-2025 buy

66. During mid-April 2025, I spoke telephonically to both ZELAYA-MURILLO and VENTURA separately during recorded narcotics related calls. During these calls, both individuals agreed to deliver a large amount of fentanyl during upcoming anticipated transactions at the end of April 2025.

## **CONCLUSION**

67. I request that based upon this Affidavit, Criminal Complaints and Arrest Warrants be issued for Ronald Isaac ZELAYA-MURILLO and Jairo Raul VENTURA charging them with distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1).

[CONTINUED ON NEXT PAGE]

68. I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information and belief.

/s/ Brian Nehring
Brian Nehring, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before
me telephonically on the ___21st___ day of April 2025.

Jeremy D. Peterson
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

*/s/Robert Abendroth*
Robert Abendroth
Assistant U.S. Attorney

24

## United States v. JAIRO RAUL VENTURA
**Penalties for Criminal Complaint**

**COUNT 1:**

VIOLATION:        21 U.S.C. § 841(a)(1) – Distribution of at least 40 Grams of a mixture
                  containing fentanyl

PENALTIES:        Mandatory minimum of 5 years in prison and a maximum of up to 40
                  years in prison; or
                  Fine of up to $5,000,000; or both fine and imprisonment
                  Supervised release of at least 4 years up to life

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 2:**

VIOLATION:        21 U.S.C. § 841(a)(1) – Distribution of at least 40 Grams of a mixture
                  containing fentanyl

PENALTIES:        Mandatory minimum of 5 years in prison and a maximum of up to 40
                  years in prison; or
                  Fine of up to $5,000,000; or both fine and imprisonment
                  Supervised release of at least 4 years up to life

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 3:**

VIOLATION:        21 U.S.C. § 841(a)(1) – Distribution of at least 400 Grams of a mixture
                  containing fentanyl

PENALTIES:        Mandatory minimum of 10 years in prison and a maximum of up to life in
                  prison; or
                  Fine of up to $10,000,000; or both fine and imprisonment
                  Supervised release of at least 5 years up to life

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**<u>COUNT 4:</u>**

VIOLATION:          21 U.S.C. § 841(a)(1) – Distribution of heroin

PENALTIES:          Up to 20 years in prison; or
                    Fine of up to $1,000,000; or both fine and imprisonment
                    Supervised release of at least 3 years up to life

SPECIAL ASSESSMENT: $100 (mandatory on each count)